IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EXELON GENERATION CO., LLC, )
　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff/Counter-Defendant, ) No. 10 C 4846
　　v. )
　　　　　　　　　　　　　　　　　　　　) Judge Robert W. Gettleman
LOCAL 15, INTERNATIONAL BROTHERHOOD )
OF ELECTRICAL WORKERS, AFL-CIO, )
　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendant/Counter-Plaintiff. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff/counter-defendant Exelon Generation Company ("Exelon") filed a one-count complaint seeking declaratory relief against defendant/counter-plaintiff Local 15, International Brotherhood of Electrical Workers, AFL-CIO ("Local 15"). Local 15 filed a counterclaim to compel arbitration. Exelon and Local 15 have filed cross-motions for summary judgment. Local 15 has also filed an additional motion to stay the instant action pending arbitration, and a motion to cite additional authority. For the following reasons, the court grants Exelon's motion for summary judgment, and denies Local 15's motions.

**BACKGROUND**

Exelon, a licensee of the Nuclear Regulatory Commission ("NRC") under the Atomic Energy Act of 1954, 42 U.S.C. § 2011 et seq. (as amended), owns and operates nuclear generating units in Illinois, New Jersey, and Pennsylvania. Local 15, a labor union headquartered in Downers Grove, Illinois, represents approximately 1,600 hourly employees at Exelon's nuclear facilities in Illinois. Exelon and Local 15 are signatories to a written collective bargaining agreement ("CBA") that contains an arbitration clause, which remains, in all respects material to this litigation, unchanged since 2001.

In 1991, the NRC issued regulations requiring nuclear power plant licensees to establish, implement, and maintain access authorization programs to ensure the reliability of those who are given unescorted access to nuclear power facilities. 10 C.F.R. § 73.56 (1991). These regulations required licensees to include a procedure to review their decisions denying or revoking an individual's unescorted access and provided that the licensee's review procedure "may be an impartial and independent internal management review." 10 C.F.R. § 73.56(e) (1991).

In the wake of the terrorist attacks on September 11, 2001, the NRC issued a series of orders strengthening these regulations "to ensure that nuclear power plants and other licensed facilities continued to have effective security measures in place given the changing threat environment." 74 Fed. Reg. 13926 (March 27, 2009). One of these orders, issued on January 7, 2003, required licensees to comply with tightened unescorted access safeguards and security measures ("the Order").[1]

In April 2004, the Nuclear Energy Institute ("NEI")[2] issued comprehensive operational guidelines, called "NEI 03-01 (Revision 1)," to implement the Order. NEI 03-01 (Revision 1) stated, in terms similar to the 1991 version of § 73.56, that an applicant denied access must be able to have "the decision, together with any additional information, reviewed by another designated management level employee of the licensee," and "[t]he determination from this review is final." NEI 03-01 at § 12.6. In addition, NEI 03-01 permitted "[a]n alternative review

---

[1] Unless federal regulations provide otherwise, the NRC's security requirements are confidential.

[2] The NEI is a consortium of nuclear power operators that represents the nuclear industry.

process that is independent and impartial," provided that the licensee included a description of that process in its access authorization program." Id.

The NRC endorsed Revision 1 as an acceptable means for the industry to implement the Order, along with other then-existing regulations regarding access authorization. Exelon then adopted NEI 03-01 (Revision 1) and the NRC's Order. Accordingly, its authorization program provided for internal management review and provided that "[t]he determination made by the Appeal Reviewer is final."

In 2007, Exelon terminated the unescorted access privileges of several Local 15 members and consequently terminated their employment. Their cases were arbitrated pursuant to the CBA, and the arbitrator overturned the employees' discharges, but withheld ruling pending this court's decision in the instant case.

On March 27, 2009, the NRC issued a Final Rule revising the unescorted access regulations. The new regulations ("Amended Access Regulations") required that the unescorted access authorization procedure "must provide for an impartial and independent internal management review," 10 C.F.R. § 75.36(1) (2009), and separately specified that "[o]nly a licensee shall grant an individual unescorted access." 10 C.F.R. § 75.36(a)(4) (2009). The NEI revised its guidelines accordingly and issued NEI 03-01 (Revision 3), which the NRC approved.[3] This version removed the prior version's reference to an "alternative review process" and stated that the internal review "is final, shall be the exclusive means by which [unescorted access] decisions may be reviewed, and may not be reviewed or overturned by any third party." Exelon

---

[3] NRC Guide 5.66 and 5.77, which include the endorsement of NEI 03-01 (Revision 3), have been filed with the court as an access-restricted document pursuant to Local Rule 26.2 and Fed. R. Civ. P. 26(c), and in accordance with the court's March 4, 2011, order granting plaintiff's motion to file them as restricted documents.

updated its authorization program to comply with the Amended Access Regulations NEI 03-01 (Revision 3). The NRC approved Exelon's program.

The parties have stipulated that these two issues require judicial resolution by declaratory judgment:

1. For cases governed by the NRC's amended regulations regarding Power Reactor Security Requirements effective as of May 26, 2009, with compliance required March 31, 2010, and corresponding revisions in May 2009 to the NEI 03-01 (Revision 3) guidelines concerning these regulations, whether the Company Nuclear Security Department's decisions to deny unescorted access rights may be reviewed and overturned by an independent labor arbitrator pursuant to the grievance and arbitration procedures set forth in the parties' CBA; and

2. Whether the NRC's Amended Access Regulations, whose compliance is required by March 31, 2010, are to be applied to access denials occurring before the enactment of the amended regulations.

## DISCUSSION

### I. The Amended Access Regulations Prohibit Arbitral Review of Unescorted Access Decisions

Exelon argues that the Amended Access Regulations' statement that "[o]nly a licensee shall grant an individual unescorted access" clearly prohibits outside review, including arbitration, of a licensee's unescorted access decisions. 10 C.F.R. § 73.56(a)(4). Exelon is correct. Because the regulation's language is clear, the court interprets it to have its plain

meaning and effect. See, e.g., Paragon Health Network, Inc. v. Thompson, 251 F.3d 1141, 1145 (7th Cir. 2001) ("We first consider whether the regulation is ambiguous. If not, then we apply the regulation according to its plain meaning."). The language states, unambiguously and without qualification, that only a licensee may grant unescorted access. Thus, Local 15's argument that this provision was intended to exclude vendors and contractors from making unescorted access decisions, not to forbid arbitration or other forms of external review, is not persuasive.

The amended language of § 73.56(l)—"[t]he procedure must provide for an impartial and independent internal management review"—clearly does not permit external review of unescorted access decisions. This amendment replaced the previous regulation's "may" with "must," making internal review mandatory instead of optional. See § 73.56(e) (1991). A court in this district has found that the previous version of the access regulations, using the "may" language, did not prohibit arbitrations regarding unescorted access decisions. Exelon v. Local 15, No. 06 C 6961, 2008 WL 4442608 (N.D. Ill. Sept. 29, 2008) (Lefkow, J.). But given the substantial change of this provision's phrasing, along with the new addition of § 73.56(a)(4) and other changes discussed below, that court's analysis does not apply to the Amended Access Regulations.

Additional new language in the Amended Regulations also supports the court's interpretation. For example, one provision provides that "[t]he licensee's or applicant's reviewing official shall determine whether to grant, certify, deny, unfavorably terminate, maintain, or administratively withdraw an individual's unescorted access or unescorted access authorization status . . . ." 10 C.F.R. § 73.56(h)(1)(I) (2009). This provision explicitly grants the

5

licensee the power to oversee its unescorted access decisions and does not provide for any external review. Further, a separate subsection states that individuals may maintain unescorted access authorization only if, among other things, "[t]he licensee's or applicant's reviewing official determines that the individual continues to be trustworthy and reliable." 10 C.F.R. § 73.56(i)(1)(v) (2009). Again, this provision does not contemplate external review of a licensee's unescorted access decision.

Finally, the NRC's decision to endorse NEI 03-01 (Revision 3) indicates that the NRC agreed with the NEI's interpretation that the Amended Access Regulations made the mandatory internal review process the "exclusive" means for reviewing access questions, and provided that the internal management review process "may not be reviewed or overturned by any third party." As the Supreme Court has instructed, "[a]n agency's interpretation of its regulations is entitled to 'substantial deference,' requiring a court to defer to the agency's interpretation 'unless an alternative reading is compelled by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (citation omitted). Here, the regulation's plain language supports Exelon's (and the court's) reading, and nothing else indicates that the agency had a contrary intent.

Local 15 argues, however, that the NRC has provided several indicia that it approved and continues to approve of arbitration of access decisions. First, it cites to the NRC's 1991 regulatory guide, which stated that the NRC did not intend that a pre-existing review procedure in a CBA be abandoned. Access Authorization Program for Nuclear Power Plants, 56 Fed. Reg. 18, 997, 19, 002 (Apr. 25, 1991). But this 1991 statement does not apply to the NRC's

6

subsequent revisions to its regulations, which clearly precluded outside review of unescorted access decisions. Contrary to Local 15's reasoning, an agency need not expressly disavow prior commentary when the regulation itself changes.

Local 15 also cites: the NRC's Regulations on Privacy, 75 Fed. Reg. No. 181, 57335 (Sept. 20, 2010), which allows for disclosure of records regarding grievances, arbitrations, and appeals; the NRC's website, which refers to arbitrations; and the NEI's approval of a Building Trades National Drug and Alcohol Testing Program for New Nuclear Construction, which provides that parties to a CBA should use the CBA's dispute resolution procedure. None of these sources address procedures for unescorted access decisions. They are, therefore, entirely inapposite.

For the foregoing reasons, the court finds that the Amended Access Regulations prohibit arbitration of unescorted access decisions.

## II. The Amended Access Regulations' Bar on Arbitral Review of Unescorted Access Decisions Is Retroactively Applicable

As Exelon correctly argues, the Amended Access Regulations' prohibition on arbitral review of unescorted access decisions applies retroactively. Because the change in the access-denial procedure is a procedural one, it applies to cases where, as here, the access termination occurred before the effective date but the arbitration would take place after that date. As a general rule, "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Landgraf v. USI Film Products, 511 U.S. 244, 264 (1994) (quotation and citation omitted). If the amended regulation "attaches new legal consequences to prior events, such that, if the party had known of the statute, it would have had an effect on the party's choice of

7

behavior," the amendment has retroactive effect and may not be applied to a pending case. Thomas & Betts Corp. v. Panduit Corp., 108 F. Supp. 2d 976, 985 (N.D. Ill. 2000). If not, the law at the time the decision is made applies. Id.

Local 15 argues that because prohibiting arbitration deprives Exelon's employees of their contractual rights under the CBA and their statutory rights under the Federal Arbitration Act, it constitutes a substantive change. But Local 15 does not explain why it would have acted differently had it known of the change, or why the change attached new legal consequences to previous events. Id. The amendment does not increase Local 15's liability, impose new duties on its previous actions, or deprive an individual who was denied access of any rights. See Thomas & Betts, 108 F. Supp. 2d at 985. It is, rather, a purely procedural change that addresses conduct after an individual requests review of an unescorted access decision. Therefore, the Amended Access Regulation bars all arbitral review of unescorted access decisions after the compliance date of March 31, 2010, even if the case arose before that date.

Local 15 also attempts to rely on the judicial policy favoring arbitration, but as Exelon points out, the presumption in favor of arbitration applies only to enforceable arbitration agreements. See Granite Rock Co. v. Int'l Bros. of Teamsters, __U.S. __, 130 S.Ct. 2847, 2858 (2010) ("all of [the Supreme Court's precedents in favor of arbitration] compelled arbitration of a dispute only after the Court was persuaded that the parties' arbitration agreement was validly formed and that it covered the dispute in question and was legally enforceable."). Here, the Amended Access Regulations rendered the parties' arbitration agreement unenforceable with regard to unescorted access decisions. Therefore, the pro-arbitration policy does not apply to the court's analysis.

**III.    Local 15's Motion To Cite Additional Authority**

Finally, Local 15 has filed a motion to cite as additional authority <u>Serv. Employees Local 73 v. Uchicago Argonne, LLC</u>, No. 10 C 2903, 2011 U.S. Dist. LEXIS 13967, (N.D. Ill. Feb. 11, 2011). This case is entirely irrelevant to any issue in the instant case. Further, the opinion was filed on February 11, 2011—two weeks before Local 15 filed its brief in support of its cross-motion for summary judgment and five weeks before it filed its response to Exelon's cross-motion. Local 15 has not provided any reason why the opinion was unavailable to it at those times or otherwise explained why it could not have cited the opinion in the course of its briefing. The motion to cite additional authority is therefore denied.

## CONCLUSION

For the foregoing reasons, the court denies Local 15's motions for summary judgment, for a stay pending completion of the subject arbitrations, and to cite additional authority. The court grants Exelon's motion for summary judgment and enters declaratory judgment as follows:

For cases governed by the NRC's amended regulations regarding Power Reactor Security Requirements effective as of May 26, 2009, with compliance required March 31, 2010, and corresponding revisions in May 2009 to the NEI 03-01 (Revision 3) guidelines concerning these regulations, Exelon's Nuclear Security Department's decisions to deny unescorted access rights may not be reviewed and overturned by an independent labor arbitrator pursuant to the grievance and arbitration procedures set forth in the parties' CBA.

The NRC's Amended Access Regulations, whose compliance is required by March 31, 2010, are to be applied to access denials occurring before the enactment of the amended regulations.

**ENTER:** May 25, 2011

_____
**Robert W. Gettleman
United States District Judge**